JUDGE CAPRONI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 10097

-------------------------------------------------------------------x

JAMIE DAVIS,

        *Plaintiff*,

v.

DENIHAN HOSPITALITY GROUP,

        *Defendant*.

-------------------------------------------------------------------x

**COMPLAINT**

14 Civ. ___

RECEIVED DEC 23 2014 U.S.D.C. S.D.N.Y.

Plaintiff Jamie Davis, by her counsel, The Harman Firm, PC, alleges for her complaint against Denihan Hospitality Group ("DHG"), as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Jamie Davis worked as a Catering Manager at Defendant DHG. Defendant fostered a workplace culture offensive and hostile to women who became pregnant. Defendant ultimately terminated Plaintiff Davis because of her pregnancy. This action seeks damages for illegal pregnancy discrimination in violation of the New York City Human Rights Law as codified at N.Y.C. ADMIN. CODE §§ 8-101-31 ("NYCHRL").

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims as the matter in controversy is between citizens of different States and the value of Plaintiff's claim exceeds $75,000.

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred within this District.

## TRIAL BY JURY

4. Plaintiff respectfully requests a trial before a jury.

## PARTIES

5. At all times relevant hereto, Plaintiff Jamie Davis was and is a resident of Bloomfield, New Jersey.

6. Upon information and belief, at all times relevant hereto, Defendant DHG is a domestic business corporation organized under the laws of New York with its principal place of business at 551 Fifth Avenue, 18th Floor, New York, New York 10176.

## STATEMENT OF FACTS

7. Plaintiff Jamie Davis is female and approximately thirty-six (36) years old.

8. In and around July 2007, Defendant hired Ms. Davis as a Catering Consultant.

9. In and around 2008, Ms. Davis was hired as a full-time employee. Over the next several years, Ms. Davis regularly received performance-related raises, as well as a number of bonuses.

10. On or about December 31, 2012, Ms. Davis went out on maternity leave.

11. Defendant has a pattern and practice of denying opportunities in its catering division to women who become pregnant and want to return to work after maternity leave.

12. Upon Ms. Davis's return to work in 2013, Defendant attempted to move her from a full time employee back to a consultant position. Defendant had previously shifted several new

mothers into "consultant" positions upon their return from maternity leave, and subsequently terminated them by ending the consultancy.

13. For example, DHG moved Ms. Davis's former supervisor, Jordan Schwartz Hendin, into a consultant position after she returned from maternity leave. Ms. Hendin's consultant position was subsequently eliminated.

14. These "consultancies" were and are nothing more than Defendant's thinly veiled efforts to rid its workplace of those employees who had exercised, or might in the future, exercise their legal right to maternity leave.

15. Further, the atmosphere at Defendant's offices was openly hostile toward pregnancy and maternity. For example, Ms. Davis's direct supervisor, Slavka Kmec, proudly announced to the office that she had decided to get an abortion.

16. Ms. Davis, aware of Defendant's practices, repeatedly resisted Defendant's efforts to make her a consultant, and was eventually restored to her prior position.

17. In and around early 2014, Ms. Davis became pregnant again; however, in and around May of 2014, she miscarried.

18. In and around the fall of 2014, Ms. Davis became pregnant again. She did not immediately reveal this pregnancy to Defendant due to her prior miscarriage, and due to Defendant's repeated practice of workplace discrimination against pregnant and childbearing women.

19. On or about October 17, 2014, Ms. Davis had a scheduled meeting with a client at 4 p.m. to tour Defendant's facilities.

20. That day, Ms. Davis started feeling some physical pain related to her pregnancy, and she notified Defendant that she needed to leave after the site tour for a personal reason.

21. However, on the way to the site tour, Ms. Davis started bleeding; she immediately called the client with whom she was to tour the site, cancelled the tour for that day, and rescheduled for a few days later.

22. Ms. Davis then went directly to her doctor for treatment.

23. Ms. Davis later completed the site tour with the client as rescheduled.

24. On or about October 29, Ms. Davis met with her supervisor Ms. Kmec, and Defendant's HR representative, Steve Alfieri.

25. During this meeting, Defendant suspended Ms. Davis for rescheduling the site call.

26. Defendant claimed that Ms. Davis had lied about where she was on October 17th, and that she could no longer be trusted. Ms. Davis informed Defendant that she was pregnant, and needed to go to the doctor on October 17 because she had pain related to her pregnancy.

27. Defendant remained adamant that Ms. Davis's unscheduled medical emergency meant that she was not trustworthy.

28. On October 31, 2014, Defendant terminated Ms. Davis' employment.

29. Ms. Davis had been a model employee with Defendant for over seven (7) years. She routinely met all her performance goals and received positive evaluations.

30. Defendant's decision to terminate Ms. Davis was motivated entirely by Ms. Davis's prior maternity leave, Ms. Davis's current pregnancy, and the prospect of Ms. Davis taking future maternity leave.

31. Shortly after her termination, Ms. Davis suffered a miscarriage and lost the pregnancy due to the stress caused by Defendant's illegal actions.

32. Defendant's termination of Ms. Davis and other new mothers is part of a clear pattern of discrimination against childbearing women.

33. Defendant's conduct is in violation of the NYCHRL, which prohibits discrimination on the basis of pregnancy.

## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
### Illegal Termination based on Gender under the NYCHRL

34. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 29 with the same force as though separately alleged herein.

35. NYCHRL § 8-107 mandates that no employer refuse to provide a reasonable accommodation to the needs of an employee for her pregnancy, childbirth, or related medical condition.

36. Defendant violated NYCHRL § 8-107 by engaging in a practice of terminating women who had used, or might in the future use, maternity leave. Specifically, Defendant terminated Ms. Davis because of conditions relating to her pregnancy.

37. As a direct and proximate consequence of Defendant's pregnancy discrimination, Plaintiff has suffered and continues to suffer substantial monetary damages, including, but not limited to, loss of past and future salary, and significant non-monetary damages, including, but

not limited to, severe emotional distress and suffering which ultimately led to the miscarriage of her pregnancy, all in amounts to be determined at trial.

38.  Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first claim, actual damages to be determined at trial, but in no event less than $1,200,000;

B.  An award of compensatory and punitive damages;

C.  Pre-judgment and post-judgment interest;

D.  Attorneys' fees and costs; and

E.  Such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 23, 2014

By: *Walker G. Harman Jr.*
Walker G. Harman, Jr. [WH-8044]
Ronnie L. Silverberg [RS-6881]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com
rsilverberg@theharmanfirm.com

6